Case 1:11-cv-05909-SLT-LB   Document 4   Filed 01/05/12   Page 1 of 14 PageID #: 42

FILED
IN CLERK'S OFFICE
US DISTRICT COURT
★ JAN 05 2012
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
NOUREDDINE MALKI,

        Plaintiff,

– against –

A. HAYES; L. MURRAY; N. WALLER;
V. WILLIAMS; K. PAGE,

        Defendants.
------------------------------------------------------x

**MEMORANDUM AND ORDER**

11-CV-5909 (SLT) (LB)

**TOWNES, United States District Judge:**

    Plaintiff Noureddine Malki, who is currently incarcerated at the Metropolitan Detention Center ("MDC"), brings this action against five MDC employees, alleging that they violated his civil rights during, or in connection with, a prison disciplinary proceeding which resulted in the loss of plaintiff's telephone privileges for 90 days. In addition to a form complaint (the "Complaint") and a sworn, 11-page addendum (the "Addendum"), plaintiff submits a proposed Order to Show Cause for Preliminary Injunction and Temporary Restraining Order (the "Proposed Order"), seeking to enjoin the defendants and others from "harassing, intimidating, and threatening plaintiff" and to restore his telephone privileges "pending an independent investigation."

    Plaintiff's motion to proceed *in forma pauperis* is granted. However, for the reasons set forth below, defendants Hayes and Williams are dismissed from this action, and plaintiff's procedural due process and Eighth Amendment claims are dismissed with respect to all defendants. Plaintiff's claims against defendants Murray and Waller are dismissed without prejudice to filing an amended complaint alleging a Sixth Amendment claim against these two defendants. Plaintiff's request for a preliminary injunction and/or temporary restraining order is summarily denied.

## *BACKGROUND*

The following facts are drawn from plaintiff's pleading and from exhibits submitted therewith. In October 2011, plaintiff was incarcerated at the MDC, awaiting re-sentencing in *United States v. Malki*, E.D.N.Y. Docket No. 06-CR-216 (BMC). According to the docket sheet relating to that case, plaintiff is represented in that action by James Glasser, an attorney affiliated with Wiggin and Dana, LLP, a New Haven law firm.

On the evening of October 26, 2011, one of plaintiff's fellow inmates, John Simmons, asked plaintiff to place a call to one Ely Fixler on his behalf (Addendum at ¶11). According to plaintiff, Fixler is "an attorney of record who represents various clients on matters concerning civil affairs" (*id.* at ¶10).[1] Although plaintiff's submissions do not allege that Fixler has ever represented plaintiff, the pleadings state that Fixler is a "legal adviser" to both plaintiff and Simmons and that he has been "instrumental in helping both inmates" (*id.*).

Simmons led plaintiff to believe that he lacked the funds to place the call to Fixler himself, and requested that plaintiff telephone Fixler and ask him to pay a legal visit to Simmons at the MDC (*id.* at ¶11). Plaintiff acceded to that request and placed a call to Fixler around 6:26 that evening. According to an Incident Report submitted with plaintiff's papers, plaintiff told the person who answered the call that he was "speaking on behalf of John Simmons." Although plaintiff alone spoke on the telephone, prison officials monitoring the call claim that "another inmate" could be "heard in the background, telling [plaintiff] what to say to the person on the other end of the phone call" (Incident Report, Part I [attached to Proposed Order]).

---

[1] This Court will take judicial notice that an Eli S. Fixler is licensed to practice in the State of New York and has appeared in this Court on three occasions. However, Eli S. Fixler's appearances have all related to commercial matters, not prisoner litigation. Accordingly, it is unclear whether plaintiff is referring to this attorney.

2

A few hours later, plaintiff was served with the Incident Report, which alleged that plaintiff had committed a Prohibited Act in violation of Code 397 (*id.*; Addendum at ¶12).² At approximately 10:30 the next morning, plaintiff was "called to the unit team office" (Addendum at ¶13), where he apparently made a statement before the Unit Disciplinary Committee (the "UDC"). Plaintiff argued that his actions did not violate Code 397 because it did not involve "abuses such as conference calling, possession and/or use of another inmate's PIN number, three-way calling, [or] providing false information for preparation of a telephone list" (*id.* at ¶13). The UDC rejected that argument and imposed a sanction of 90-days' loss of telephone privileges (*id*). It is unclear whether the UDC ever issued a written decision.

The UDC's ruling did not restrict plaintiff's use of email. However, plaintiff alleges that his "electronic mail access to his lawyers and family members" was "so severely curbed" that it took "less time for plaintiff's recipients to receive regular postal mail than electronic mail" (*id.* at ¶17). Plaintiff does not purport to know who or what is responsible for the alleged delays in his email, stating that he "was never told of specific reason(s)" (*id.*).

On October 31, 2011, plaintiff commenced an appeal from the UDC's decision by filing an Informal Request to Staff with defendant Page, his Unit Manager, requesting a meeting to attempt to informally "resolve the issue of the properly placed legal call made by inmate to attorney Ely Fixler on October 26, 2011" (Addendum, Ex. A [docketed with Proposed Order]). Plaintiff's pleading does not allege that Page denied this request, but states that Page "was

---

²The Prohibited Acts and Available Sanctions are listed in 28 C.F.R. § 541.3, Table 1, and are divided into four separate categories: Greatest, High, Moderate and Low. Code 397, which is among the Moderate Severity Level Prohibited Acts, encompasses "[u]se of the telephone for abuses other than illegal activity which do not circumvent the ability of the staff to monitor frequency of telephone use, content of the call, or the number called, or to commit a further Moderate category prohibited act."

evasive and avoided plaintiff" (Addendum at ¶15). On October 31, 2011, plaintiff also filed a "Legal Telephone Call Request Form," asking that he be permitted to call Mr. Glasser (Addendum, Ex. C). In that form, plaintiff represented that the call was necessary because an "imminent court deadline" precluded use of mailed correspondence.

On November 1, 2011 – the day after filing the Informal Request to Staff – plaintiff filed a Request for Administrative Remedy form, also known as a BP-9 (*id.*). Although plaintiff has provided this Court with a copy of the BP-9 form, which is dated November 1, 2011 (Addendum, Ex. B), it is unclear when this form was logged into the Administrative Remedy Index as received. However, by 2:00 p.m. on November 3, 2011, plaintiff had already "asked for a photocopy of each filed document to include as attached exhibits to his complaint" (Addendum at ¶15).

On the afternoon of November 3, 2011, plaintiff asked to see Page in an effort to follow up on his request for the photocopies (*id.*). Page's secretary, defendant Williams, responded to plaintiff's request by yelling at him, telling him to leave and threatening him "with yet another incident report if he did not cease asking to see her boss and requesting copies of the filed forms" (*id.*). This behavior, which allegedly "harshly belittled" and "intimidated" plaintiff (*id.*), led plaintiff to believe that he would "be a direct target of retaliation if he continue[d] any form of administrative remedies at MDC" (*id.* at ¶ 16). Although plaintiff maintains that he intends to "proceed with using all available remedies regardless of the threats" (*id.*), it is unclear whether plaintiff has filed a BP-10 or BP-11.

*The Complaint in this Action*

On November 28, 2011, before receiving a response to his BP-9, plaintiff commenced this action by delivering his complaint to the authorities at MDC. Plaintiff's pleading consists of

4

two documents: a five-page form designed for filing Civil Rights Complaints pursuant to 42 U.S.C. § 1983, and an 11-page, typewritten Addendum. The five-page form, which is dated November 28, 2011, largely refers the reader to the Addendum.

The Addendum specifically alleges that "[t]his is a civil action authorized by 42 U.S.C. §1983" against five employees of the MDC: Hayes, Murray, Waller, Williams and Page (Addendum at ¶1). The Addendum alleges that Hayes, "the officer in charge of writing incident reports" (*id.* at ¶ 4), knew that plaintiff's actions did not violate Code 397 at the time he wrote the Incident Report (*id.* at ¶21). In addition, it faults Hayes for failing to realize that the phone number called on October 26, 2011, belonged to Fixler, even though that fact was evident from plaintiff's Contact List (*id.*). Although the Addendum does not allege that plaintiff completed a Legal Telephone Call Request Form prior to telephoning Fixler, it asserts that the call to Fixler should have been "deemed to be a legal call" and that a "thorough investigation" would have exonerated him (*id.*).

The Addendum also alleges that defendant Waller, the unit case manager who "chairs sanctions against inmates" (*id.* at ¶6), and defendant Murray, plaintiff's unit counselor (*id.* at ¶5), exceeded their authority by imposing the sanction of 90-days' loss of telephone privileges. Citing 28 C.F.R. § 541.2(b), plaintiff argues that this sanction can only be imposed by the Warden and that loss of telephone privileges for more than 60 days is not an Available Sanction for a Moderate Severity Level Prohibited Act (*id.* at ¶25).

The Addendum further alleges that Page conspired with Hayes, Murray, and Waller, to ignore certain regulatory requirements (*id.* at ¶23). Specifically, it states that defendants violated 28 C.F.R. §541.5(b), which requires "a Bureau staff member" to investigate the incident after the Incident Report is served, and 28 C.F.R. §541.5(b)(A)(3), which permits informal resolution of

the Incident Report (*id.* at ¶¶ 23-24). The Addendum does not allege that plaintiff requested informal resolution prior to appearing before the UDC, but states, "Plaintiff has reason to believe that the incident report could have been dismissed or resolved by (UDC) had they investigated and looked through all options available in the disciplinary process" (*id.* at ¶24) (parentheses in original).

That portion of the Addendum entitled "Legal Claims" does not specifically refer to Williams. However, that portion of the Addendum which lists the defendants states that Williams is Page's secretary and that she "used threats and intimidation against plaintiff on behalf of her boss" (*id.* at ¶8).

Although the Addendum does not specifically allege that any particular defendant has violated a specific Constitutional provision, the "Legal Claims" portion of the Addendum mentions or suggests three Constitutional violations. First, it alleges that unspecified defendants violated plaintiff's Sixth Amendment right to counsel by revoking his telephone privileges, delaying and/or blocking his email access, and delaying his formal requests for legal calls to his attorneys (*id.* at ¶ 19). Second, it alleges that "defendants' actions infringed plaintiff's right to be free from any infliction of cruel and unusual punishment," in violation of the Eighth Amendment of the United State Constitution. Third, it implies that defendants violated plaintiff's rights to procedural due process by failing to comply with regulations requiring that staff members investigate the Incident Report and attempt to informally resolve matters in the course of the appeal from the UDC's decision.

### *Plaintiff's Request for Injunctive Relief*

Along with his complaint, plaintiff submits a proposed Order to Show Cause for Preliminary Injunction and Temporary Restraining Order (the "Proposed Order"). This Proposed

Order incorporates a temporary restraining order prohibiting defendants and "their officers, agents, employers, and all persons acting in concert . . . with them . . . from harassing, ploting [*sic*], intimidating, and threatening plaintiff." In addition, the Proposed Order seeks a preliminary injunction "restoring plaintiff's telephone privileges pending an independent investigation" and ordering the defendants "not to engage in retaliatory acts" in response to this lawsuit.

Plaintiff has not submitted an affidavit or memorandum of law in connection with his request for preliminary injunctive relief. However, in the Addendum, which is notarized, plaintiff states:

> If plaintiff is forced to wait until after using the prison grievance system to sue, he will be irreparably harmed by all kinds of threats of harassment, intimidation, and stiff punishment. It is generally known that solitary confinement is always used as a tool to silence, block, and impede the process of a lawsuit. Threats plaintiff is facing are rampant and so drastically serious as to cause on-going pain and suffering that plaintiff's need of a firm injunctive relief and a temporary restraining order are the best solution to stop defendants' aggression. Further, plaintiff asserts that ordinarily a federal lawsuit goes on for months or years before the court reaches a decision. Nonetheless, plaintiff needs immediate help (*id.* at ¶ 16).

## *DISCUSSION*

Title 28, section 1915A, of the United States Code requires this Court to review the complaint in a civil action in which a prisoner seeks redress from officers or employees of a governmental agency and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, . . . fails to state a claim upon which relief may be granted . . . [or] seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b); *see Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per

7

curiam). Since plaintiff is proceeding *pro se*, his complaint must be read liberally and interpreted as raising the strongest arguments it suggests. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," this Court must grant leave to amend it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999).

In reviewing plaintiff's pleading pursuant to 28 U.S.C. § 1915A, this Court notes that the Addendum begins by alleging that "[t]his is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the United States Constitution." Addendum at ¶1. Section 1983, however, provides a mechanism for obtaining relief against defendants who act under color of state – not federal – law. *See Perez v. Hawk*, 302 F. Supp. 2d 9, 18 (E.D.N.Y. 2004). None of the defendants named in plaintiff's pleading are state employees. Accordingly, there is nothing to suggest that plaintiff has a cause of action under Section 1983.

In light of plaintiff's *pro se* status, this Court will construe this Section 1983 action to be an action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) – a case which created a right of action against federal employees who are alleged to have acted under color of federal law to deprive a plaintiff of a constitutional right. *See Tavarez v. Reno*, 54 F.3d 109, 109-10 (2d Cir. 1995) (per curiam) (holding that a district court properly construed a *pro se* §1983 action as a *Bivens* action); *Daloia v. Rose*, 849 F.2d 74, 75 (2d Cir. 1988) (per curiam) (construing a *pro se* §1983 claim as a *Bivens* action). However, "a plaintiff in a *Bivens* action is required to allege facts indicating that the defendants were

8

personally involved in the claimed constitutional violation." *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009). Furthermore, "[b]road allegations of conspiracy are insufficient; the plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" *Id.* (quoting *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003).

In this case, the facts alleged in plaintiff's pleadings fail to allege constitutional violations on the part of all five defendants. First, the only allegations in plaintiff's pleadings relating to defendant Williams state that she yelled at plaintiff and threatened him "with yet another incident report if he did not cease asking to see her boss and requesting copies of the filed forms." Addendum at ¶15. It is well-settled that verbal harassment and threats alone do not constitute a cognizable violation of an individual's constitutional rights. *See, e.g., Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (finding claim that prison guard called plaintiff names did not allege any appreciable injury and was properly dismissed); *Shabazz v. Pico*, 994 F.Supp. 460, 474 (S.D.N.Y.1998) ("verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right . . . ."); *Brown v. Brabazon*, 95 CV 4183, 1998 WL 177612, *14 (E.D.N.Y. April 13, 1998) ("allegations of threats or verbal harassment, without any injury or damage, do not state a cause of action"). Accordingly, plaintiff's claims against Williams are dismissed.

Similarly, plaintiff's allegations against Murray and Waller do not suggest any cognizable constitutional claims. First, plaintiff's claim that these defendants exceeded their authority by imposing the sanction of 90-days' loss of telephone privileges is based upon an outdated version

9

of the regulations.[3] According to 28 C.F.R. § 541.8(f) (2011), "the UDC can impose any of the available sanctions listed in Table 1 and 2 [of 28 C.F.R. §541.3], except loss of good conduct sentence credit, disciplinary segregation, or monetary fines." Table 1 expressly authorizes "Loss of privileges (*e.g.*, visiting, telephone, commissary, movies, recreation)" as a sanction for any Moderate Severity Level Prohibited Act, including a violation of Code 397.

Second, even if plaintiff could allege facts to substantiate his claim that Murray and Waller "conspired" with Page and Hayes to ignore regulatory requirements, plaintiff's allegations would not give rise to a procedural due process claim. In order to assert such a claim, "a prisoner must make two showings: (1) that he enjoyed a protected liberty interest, and (2) that deprivation of that interest occurred without due process of law." *Alvarado v. Kerrigan*, 152 F. Supp. 2d 350, 354 (S.D.N.Y. 2001) (citing *Taylor v. Rodriguez*, 238 F.3d 188, 191 (2d Cir.2001)). However, a prisoner's liberty interests are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

"A disciplinary sanction does not meet the *Sandin* 'atypical and significant hardship' standard unless it is 'onerous.'" *Alvarado*, 152 F. Supp. 2d at 354 (quoting *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999)). The temporary deprivation of telephone privileges does not meet this standard. *See, e.g., Garcia v. Watts*, No. 08 Civ. 7778 (JSR)(HP), 2009 WL 2981911, at *2 (S.D.N.Y. Sept. 15, 2009) (citing *Thompson v. LaClair*, 9:08-CV-0037 (FJS/DEP), 2009 WL 2762164 at *5 (N.D.N.Y. Aug. 25, 2009), and *Smart v. Goord*, 441 F. Supp. 2d 631, 640

---

[3] 28 C.F.R. § 541.2, upon which plaintiff relies, was amended in December 2010, along with many other portions of 28 C.F.R. part 541, subpart A. *See* 75 Fed. Reg. 76267 (Dec. 8, 2010).

10

(S.D.N.Y. 2006)); *Jarecke v. Hensley*, No. 3:07-cv-1281 (JCH), 2009 WL 2030394, at *12 (D. Conn. July 9, 2009) ("courts considering this issue have held that sanctions similar to those Jarecke received [*i.e.*, fifteen days confinement in punitive segregation, thirty days loss of recreation, and sixty days loss of telephone privileges] do not rise to the level of an atypical and significant hardship."). Similarly, a loss of telephone privileges for 90 days is not such a severe sanction as to constitute the sort of cruel and unusual punishment that violates the Eighth Amendment. *See, e.g., Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 381 (S.D.N.Y. 2011) (incarceration in the SHU and a ninety-day loss of visitation, phone and commissary privileges not severe enough to constitute cruel and unusual punishment); *Randolph v. Simmons*. 757 F. Supp. 2d 233, 237 (W.D.N.Y. 2010) (three months in the SHU, loss of privileges and good time did not violate Eighth Amendment).

While plaintiff's pleading does not make out a procedural due process or Eighth Amendment claim, it may allege a Sixth Amendment claim. In the Addendum, plaintiff expressly invokes the Sixth Amendment, stating that "revocation of telephone privileges, and delaying and/or blocking electronic mail interfere[d] with [his] access to counsel," as did delays of his "formal requests for legal calls to his attorneys." Addendum at ¶19. Plaintiff then cites to *Murphy v. Walker*, 51 F.3d 714, 718 (7th Cir. 1995), in which the Seventh Circuit opined that "[r]estrictions on a detainee's telephone privileges that prevented him from contacting his attorney violate the Sixth Amendment right to counsel."

Plaintiff does not specifically identify the individuals responsible for this alleged Sixth Amendment violation. The Addendum alleges that Murray and Waller were at least partly responsible for imposing the sanction of loss of telephone privileges (Addendum at ¶¶5-6), but

11

does not allege that these individuals were aware of his urgent need to contact Mr. Glasser. However, the Addendum does allege that plaintiff requested permission to place an unmonitored legal call to these attorneys at a time when there were "upcoming court dates," and that this request was never adjudicated (*id.* at ¶15). Since a "Legal Telephone Call Request Form," Addendum, Ex. C, indicates that this request was directed to "Mr. Paige [*sic*], 8th floor Unit Manager," this Court finds plaintiff's pleading, construed liberally, may state a Sixth Amendment claim against Mr. Page. To the extent that plaintiff seeks to allege Sixth Amendment claims against defendants Murray and/or Waller, plaintiff shall amend his complaint to attempt to state a claim against these defendants by February 6, 2012.

### *The Request for Injunctive Relief*

Although this Court concludes that plaintiff's pleading may state a Sixth Amendment claim against defendant Page, this Court cannot find any basis for granting preliminary injunctive relief. Preliminary injunctive relief "is an extraordinary remedy that should not be granted as a routine matter." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990). To obtain a preliminary injunction or temporary restraining order, the moving party must show "that 1) absent injunctive relief, it will suffer irreparable harm, and 2) either a) that it is likely to succeed on the merits, or b) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*, 175 F.3d 266, 270 (2d Cir. 1999). "[T]here is no hard and fast rule in this circuit that oral testimony must be taken on a motion for a preliminary injunction or that the court can in no circumstances dispose of the motion on the papers before it." *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Rels.*, 107

12

F.3d 979, 984 (2d Cir. 1997) (internal quotations and citations omitted). Indeed, motions for preliminary injunctions are "frequently denied if the affidavits [in support of the motion] are too vague or conclusory to demonstrate a clear right to relief under Rule 65." 11A C.Wright & A. Miller, *Fed. Practice & Proc.*, Civil 3d § 2949 (2004); *see, e.g., McGillicuddy v. Laidlaw, Adams & Peck, Inc.*, No. 88 Civ. 4928, 1995 WL 1081307, at *12, n. 19 (S.D.N.Y. Aug. 14, 1995) (summarily denying an application for preliminary injunctive relief where the movant's papers failed to demonstrate a basis for granting "this extraordinary remedy").

In this case, plaintiff has not adduced any evidence suggesting immediate, irreparable harm. Plaintiff's allegation that "he will be irreparably harmed by all kinds of threats of harassment, intimidation, and stiff punishment" absent an injunction is speculative. Moreover, it seems unlikely that plaintiff will succeed on the merits. While plaintiff's pleading may state a Sixth Amendment claim, any "institutional restriction infring[ing] . . . a specific constitutional guarantee . . . must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979)). Thus, even if the telephone suspension, slow email and delays in adjudicating plaintiff's request for a legal call infringed plaintiff's Sixth Amendment rights, the MDC's countervailing interests in maintaining institutional security and preserving internal order and discipline may well justify the limitation or retraction of such rights. *See Stamper v. Campbell County, Ky.*, 415 Fed. Appx. 678, 680-81 (6th Cir. Mar. 16, 2011). Furthermore, even if plaintiff could establish that he was likely to succeed on his Sixth Amendment claim, this showing would not justify restoring all of plaintiff's telephone privileges.

## CONCLUSION

For the reasons set forth above, this case is construed as an action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Because the facts alleged by plaintiff do not suggest that defendants Hayes or Williams were personally involved in violating plaintiff's constitutional rights in any respect, these defendants are dismissed from this action. In addition, since the complaint does not state a *Bivens* claim against defendants Murray and Waller, these defendants are dismissed without prejudice to filing an amended complaint alleging a Sixth Amendment claim against them by February 6, 2012. Plaintiff's procedural due process and Eighth Amendment claims are dismissed with respect to all defendants and plaintiff's request for a preliminary injunction and/or temporary restraining order is summarily denied.

The Clerk of Court is directed to issue a summons as to defendant Page, and the United States Marshals Service is directed to serve that summons, the complaint, and this Memorandum and Order on defendant Page without prepayment of fees. The Clerk of Court shall also mail a courtesy copy of this complaint and Memorandum and Order to the United States Attorney for the Eastern District of New York. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

/SANDRA L. TOWNES
United States District Judge

Dated: January 4, 2012
Brooklyn, New York

14